CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

OCT 18 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JEREMY R. McGAVOCK,<br>Defendant. | )<br>)<br>)<br>) Case No. 7:05M404<br>)<br>) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge |

## MEMORANDUM OPINION

This matter is before the court following trial of defendant for four violations arising on the Blue Ridge Parkway ("Parkway"). The criminal complaint charged defendant Jeremy R. McGavock with four violations of the Code of Federal Regulations: two violations of 36 C.F.R. § 4.23 concerning Driving Under the Influence ("DUI"), a charge of public intoxication under 36 C.F.R. § 2.35(c) and a reckless driving charge, 36 C.F.R. § 4.2, incorporating Virginia Code § 46.2-852.

At the close of the evidence, defendant made a motion under Rule 29 for a judgment of acquittal, arguing that no evidence had been presented of reckless driving or public intoxication to the degree required under the regulation, and that the DUI charges be dismissed because there is both insufficient evidence to support those charges and because the Intoxilyzer 5000 test violates the due process clause of the United States Constitution.

At trial, the court granted the Rule 29 motion as regards the reckless driving charge as there was no evidence apart from the mere happening of an accident to suggest reckless driving. Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 630 (1970) ("The mere happening of an accident does not give rise to an inference of reckless driving.") As the remaining charges

implicated defendant's constitutional argument, the court took those under advisement to issue a written ruling on these charges given a recent Virginia court ruling on the issue.

As set forth in this Memorandum Opinion, the court finds the defendant guilty of violating 36 C.F.R. § 4.23(a)(2) and 36 C.F.R. § 2.35(c). A hearing will be set for sentencing.

I

Two witnesses testified at trial, Trooper Andrew Dayes of the Virginia State Police and Stephen K. Buxton, United States Park Service Ranger. Trooper Dayes testified that he came across defendant walking on the side of the Blue Ridge Parkway at 2:50 a.m. on the early morning of July 19, 2005 near milepost 110 in Roanoke County, Virginia. Dayes testified that as it was not normal practice to walk on the side of the Parkway at that time of night, he stopped to ask the defendant if there was any problem.[1] Trooper Dayes testified that he asked defendant if everything was okay, and defendant responded that he was okay and said that he "just had an accident." As Trooper Dayes did not see any evidence of an accident, he asked defendant where the accident occurred and was told "just behind me." Trooper Dayes testified that the accident

---

[1] Defendant also challenged the constitutionality of Trooper Daye's initial encounter with defendant, arguing that it required reasonable suspicion under Terry v. Ohio, 392 U.S. 1 (1968). While Trooper Dayes conceded on cross-examination that he did not have any reasonable suspicion that defendant was committing a crime, he testified that defendant was walking alone on the Blue Ridge Parkway at 2:50 a.m. and that because it was not normal practice to do so, he stopped and asked defendant if everything was okay. Defendant responded that he was okay but had just had an accident. The Fourth Amendment is not triggered by such a consensual encounter between a police officer and a private citizen. United States v. Burton, 228 F.3d 524, 527 (4th Cir. 2000). There was no evidence that this initial encounter was threatening or constituted investigatory detention. As in United States v. Perry, 20 Fed. Appx. 97, 2001 U.S. App. LEXIS 13954 (4th Cir. 2001), the evidence in this case established that the initial inquiry by Trooper Dayes as to whether the defendant was okay "was a quintessential consensual encounter." Perry, 20 Fed. Appx. at 103. Indeed, as Terry v. Ohio suggests, it would have been "poor police work indeed" for the trooper to have driven past defendant in that place and at that hour without stopping. Terry, 392 U.S. at 23.

2

scene was in close proximity to where he encountered defendant, such that defendant was able to walk a very short distance to the embankment over which his car was located. Dayes drove his car a short distance to the spot indicated by defendant and saw a small red Nissan down a steep bank with its wheels facing upwards. Trooper Dayes noted that it appeared that the car had rolled at least one time and that both the left and right front tires were off of the rim.

As to the defendant, Dayes testified that he appeared nervous, had bloodshot eyes, and had a strong odor of alcohol about him. Dayes described the horizontal gaze nystagmus test he administered to defendant, and that defendant did poorly on the test. While on cross-examination Trooper Dayes could not identify the federal agency which sets standards for that test, he testified that the test administered by him was consistent with his training and Virginia State Police procedure.

Ranger Buxton testified that he arrived at the scene somewhat later, around 3:30 a.m., and described that he observed defendant's car upside down and sixteen feet over an embankment. When he approached the defendant, Ranger Buxton testified that he noticed a strong odor of alcohol and that his eyes appeared bloodshot. Also, Ranger Buxton observed a beer can and bag in the impact area with fresh beer residue. At 3:40 a.m., Ranger Buxton administered a few field sobriety tests. Buxton testified that defendant had trouble counting and used his arms to steady himself on the one leg stand test and also used his arms to balance on the walk and turn test, again suggesting alcohol consumption. A preliminary breath test was administered in the field, and defendant was taken into custody at 3:47 a.m. Buxton escorted defendant to the Roanoke

3

City Jail, where at 4:40 a.m., he administered to defendant a breath test on an Intoxilyzer 5000 device, registering .10 grams of alcohol per 210 liters of breath.[2]

Ranger Buxton testified that defendant told him that he had consumed four twelve ounce beers prior to the accident, that he had his last beer one hour prior to the accident and that he had not had any alcohol after the accident. Buxton testified that defendant first told him that he had a tire blow out causing the accident, but then changed his story to state that he was changing the radio station and had a lot on his mind.

At the close of the government's case, defendant moved to dismiss the case under Rule 29 of the Federal Rules of Criminal Procedure, arguing that the testimony as to the nystagmus and other field tests was not supported by a proper scientific foundation under Merrill Dow v. Daubert, 509 U.S. 579 (1993), and that the breath test was not admissible as it violated both the confrontation clause and the due process clause of the United States Constitution, citing Francis v. Franklin, 471 U.S. 307 (1985), and recent oral rulings by a Fairfax County General District Court judge. Defendant also argued that defendant could not be convicted of DUI as there was no evidence as to when defendant was driving the car and had the accident, much less his blood alcohol level at that time.

---

[2] Ranger Buxton testified that he had been an officer with the National Park Service since 1985 and on the Blue Ridge Parkway since 2001. He has participated in three field sobriety test training courses and has taken Intoxilyzer 5000 training in both Oklahoma and Virginia. Buxton testified that he has operated the Intoxilyzer since 1996 and is now a supervising officer on its operation. Buxton testified that the machine was tested and determined to be accurate by the Virginia Department of Forensic Science on May 25, 2005.

4

## II

Defendant first argues that the evidence is insufficient to find defendant guilty of DUI and public intoxication under the federal regulations. Defendant was charged under two separate federal regulations prohibiting DUI, 36 C.F.R. § 4.23(a)(1) and 36 C.F.R. § 4.23(a)(2), and one concerning public intoxication, 36 C.F.R. § 2.35(c). These regulations provide as follows:

> Operating or being in actual physical control of a motor vehicle is prohibited while:
>
> (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
>
> (2) The alcohol concentration in the operator's blood or breath is .08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

36 C.F.R. § 4.23(a).

> Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited.

36 C.F.R. § 2.35(c).

As regards the DUI charges, defendant argues that as there was no evidence as to when the accident happened and defendant was last driving, there is no way to prove what that he was intoxicated while driving. Defendant is wrong. Trooper Dayes testified that he saw defendant at 2:50 a.m. on the Blue Ridge Parkway and was told by defendant that he had just had an accident. Dayes also testified that the accident scene was in close proximity such that defendant was able

5

to quickly walk back to the embankment where his car was located, corroborating defendant's statement that the accident had just happened. Thus, the evidence established that the accident happened just before 2:50 a.m. and that at that time defendant had bloodshot eyes and smelled of alcohol. Defendant testified that he had four beers that evening and did not have any after the accident.

In this case, the government established through evidence including factual observations, field sobriety tests, and the Intoxilyzer 5000 reading, that defendant was operating his vehicle on the Blue Ridge Parkway while intoxicated. Trooper Dayes found defendant walking alone on the Parkway at 2:50 a.m., and defendant indicated he just had an accident. That admission, combined with the proximity of the accident, establishes the time of the accident.

As regards public intoxication, defendant argues that insufficient evidence was presented at trial to convict him of public intoxication under 36 C.F.R. § 2.35(c), which prohibits individuals from being in a national park while under the influence of alcohol to such a degree as to endanger themselves or others, or damage property or park resources. The evidence indicates defendant was present on the Blue Ridge Parkway, intoxicated, and sufficiently vulnerable to danger in his state to allow a conviction under 36 C.F.R. § 2.35(c).

Federal precedent construing this regulation confirms this finding. In United States v. Hogue, 752 F.2d 1503 (9th Cir. 1985), the court affirmed the conviction of defendant under 36 C.F.R. § 2.35(c). Id. The court articulated the purpose of this regulation to be to "prohibit the creation of unreasonable and unnecessary risks in federal park lands." Id. at 1504. Defendant in Hogue was found sleeping in her parked car in a non-designated camping site in a remote part of the Lake Mead Recreation Area wearing high heeled shoes. Id. at 1504. The court found the

6

defendant endangered herself in these circumstances because she was alone at night in a remote part of the park, asleep in a car with the window open, unequipped for camping and with her abilities substantially impaired by alcohol. Id. at 1504; see also United States v. Regan, 93 F. Supp. 2d 82, 84-86 (D. Mass. 2000) (upholding a conviction under 36 C.F.R. § 2.35(c) because defendant was a threat to himself while walking alone on seashore property in a state where he became unsteady in his gait and slurring his speech); cf. United States v. Nyemaster, 116 F.3d 827, 829-30 (9th Cir. 1997) (defendant was found asleep in his car at a designated campsite, properly attired for the weather, and using his car only for shelter and thus his conviction under 36 C.F.R. § 2.35(c) was reversed due to lack of sufficient vulnerability to danger or excessive level of intoxication).

Second, defendant argues that the officers' testimony as to the physical field tests administered to defendant lacked proper scientific foundation for admission in federal court under Daubert. Both Trooper Dayes and Ranger Buxton testified that they administered standard field sobriety tests to defendant: the horizontal gaze nystagmus test, the walk and turn test and the one leg stand test. Each officer testified that he had received ample training in these tests and that they were administered in accordance with their training. While Dayes could not name the federal agency that sanctioned the tests, he testified that he followed Virginia State Police procedure in administering the horizontal gaze nystagmus test.

There is nothing about the administration of these standard field sobriety tests that runs afoul of Daubert. The testimony of Trooper Dayes and Ranger Buxton that the defendant had bloodshot eyes, appeared nervous and had a strong odor of alcohol about him is based on common observations and would not qualify as expert opinion. See, e.g., Volk v. United States,

7

57 F. Supp. 2d 888, 895 n.3 (N.D. Cal. 1999). However, testimony regarding conclusions drawn from the administration of field sobriety tests requires specialized knowledge and thus likely qualifies as "expert testimony." Id.

Daubert requires that expert testimony be both relevant and reliable, subject to testing and general acceptance in the scientific community. Daubert, 509 U.S. 579. In Kuhmo Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court held that a trial court may invoke the Daubert factors whenever they are reasonable measures of the reliability of expert testimony. Id. at 152. Trial courts have broad discretion to decide how to test an expert's reliability and whether or when a special briefing is needed to investigate reliability. Id. at 152. Thus, a trial judge may avoid unnecessary or protracted reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and require appropriate proceedings in more complex cases where there is cause to question the expert's reliability. Id. at 152.

The standard field sobriety tests testified to by the officers are universally employed tools of law enforcement officers, and, as such, are undoubtedly reliable under Daubert. See, e.g., Volk, 57 F. Supp. 2d at 894-95 (upholding a decision to admit an officer's testimony concerning field sobriety tests without applying the Daubert factors because the testimony's reliability was adequately considered). Furthermore, the officers testified as to their training in conducting field sobriety tests, and that the tests performed on the defendant were in accordance with standard procedures and their training. The reliability of these tests as administered in this case therefore was established.

8

# III

Defendant makes two constitutional arguments. First, defendant argues that the certificate of blood alcohol based on a result obtained from breath analysis be excluded as it violates the due process clause. Defendant argues based on Francis v. Franklin, 471 U.S. 307 (1985), and a recent ruling by a Fairfax County, Virginia General District Court that this certificate constitutes an unconstitutional burden shifting presumption with respect to the issue of driving under the influence.

The Supreme Court in Francis states that the due process clause of the Fourteenth Amendment prohibits a state from using presumptions that have the effect of relieving the state of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. Francis, 471 U.S. at 313. In Francis, the question was whether a reasonable juror could have understood the jury instruction to be a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent once the state proved the predicate acts. Id. at 316. The Supreme Court has made clear that a presumption that operates by shifting the burden of persuasion on an element of the offense violates the due process clause. Id. at 317.

Defendant argues based on Francis that the certificate of blood alcohol operates as a mandatory presumption of driving under the influence which violates the due process clause. Neither the federal regulation nor the introduction of the blood alcohol certificate constitutes an unconstitutional presumption of intoxication which violates the due process clause. The certificate is merely one factor to be considered in determining whether a defendant was driving under the influence of alcohol. The government must put on evidence that shows at the time he was driving, defendant was intoxicated. That evidence may come in the form of factual

9

observations, in this case defendant's bloodshot eyes and odor of alcohol, conclusions drawn from field sobriety tests, or the results of scientific tests such as the Intoxilyzer 5000. The blood alcohol certificate is but one piece of evidence used to establish a violation of 36 C.F.R. § 4.23(a)(2), and does not create an unconstitutional presumption.

This finding is consistent with this court's longstanding precedent, United States v. Sink, No. 96-0008R (W.D. Va. Apr. 3, 1996), where the court held that 36 C.F.R. § 4.23(a) does not operate as a per se rule because a test result above the legal limit does not automatically render a defendant guilty. Id. The prosecution must prove beyond a reasonable doubt that defendant was driving while his blood alcohol concentration was above a certain level in order to obtain a conviction under this statutory section. Id.

## IV

An additional constitutional issue raised at trial concerns whether the admission of the certificate of blood alcohol analysis based on a result obtained from a breath test violates the confrontation clause of the Sixth Amendment. The Court of Appeals of Virginia recently addressed this issue in Luginbyhl v. Commonwealth, 618 S.E.2d 347, 2005 Va. App. LEXIS 329 (2005). In Luginbyhl, a confrontation clause issue was raised because a blood alcohol certificate was admitted at trial without the testimony of the officer who administered the test, allegedly in violation of defendant's Sixth Amendment right. Id. at *5.

The court held that the result of a breath test contained in a certificate of analysis was not hearsay evidence and therefore did not implicate the confrontation clause of the Sixth Amendment. Id. at *6. The court held that evidence that is not a statement from a human witness is not hearsay. Id. at *8. The breath test result was generated by a machine and does not depend

10

on the administering officer's veracity or perceptive abilities. Id. at *9. Therefore, the breath test does not implicate the Sixth Amendment. Id. at *11.

However, the court found that the administering officer's statements on the certificate as to his license to operate the machine and the proper working of the machine are hearsay, and without the officer present to cross examine, defendant's Sixth Amendment rights are implicated. Id. at *12-14 (ultimately holding that because such statements are non-testimonial, the Commonwealth did not have to show unavailability and prior opportunity for cross examination); see Crawford v. Washington, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination.").

In this case, Ranger Buxton testified that he administered the Intoxilyzer 5000 test to the defendant on the night in question. Thus, he was available for cross examination at trial as to his qualifications to operate the machine as well as the proper working of the machine. The Ranger testified that he is licensed to operate the Intoxilyzer 5000 in Virginia and that the machine was tested and determined to be in proper working order on May 25, 2005. There is, therefore, no confrontation clause concern in this case.

V

Given these findings, the court finds defendant guilty of violating the federal regulations regarding driving under the influence on the Blue Ridge Parkway and public intoxication in a national park in violation of 36 C.F.R. § 4.23(a)(2) and 36 C.F.R. § 2.35(c). Inasmuch as the court finds the defendant guilty of violating 36 C.F.R. § 4.23(a)(2), the additional charge under 36 C.F.R. § 4.23(a)(1) is dismissed.

11

The Clerk is directed to serve a copy of this opinion to all counsel of record and schedule a sentencing hearing.

By Order entered into this 18th day of October, 2005.

By: /s/ Michael F. Urbanski
United States Magistrate Judge